IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEMMA L. PIERCHALSKI DMD and JOSEPH ABRAHAM, | ) ) ) | No.: 2:19-cv-01352-RJC |
| Plaintiffs, | ) ) ) | Judge Robert J. Colville |
| v. | ) ) | |
| MID-CENTURY INSURANCE COMPANY (d/b/a FARMERS INSURANCE), | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Partial Motion for Summary Judgment (ECF No. 100) filed by Defendant, Mid-Century Insurance Company d/b/a Farmers Insurance. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). The Motion has been fully briefed and is ripe for disposition.

## I. Factual Background & Procedural History

### A. Procedural History[1]

Plaintiffs Gemma L. Pierchalski ("Dr. Pierchalski") and Joseph Abraham ("Abraham") (collectively, "Plaintiffs"), husband and wife, initiated a lawsuit in the Court of Common Pleas of Allegheny County against defendants Samuel Sanders and Parthenia Codgell, arising out of an accident involving Dr. Pierchalksi that allegedly occurred on March 21, 2016 ("the 2016 accident") in the Bakery Square neighborhood of Pittsburgh. *Pierchalski et al. v. Sanders et al.*, 2 GD 18-

---

[1] The Procedural History detailed in this Memorandum Opinion comes from the Court's review of the record and the Court's October 9, 2020 Memorandum Opinion (ECF No. 41) and June 25, 2021 Memorandum Opinion (ECF No. 49).

003817.   That matter was removed to this court and subsequently remanded to state court. *Pierchalsky v. Sanders*, C.A. 2:18-cv-01540-DSC-CRE (April 29, 2019) (closed case).

Over a year later, Dr. Pierchalski was involved in another accident ("the 2017 accident"), involving Christine Pryor, which occurred in Cranberry Township, Pennsylvania.   Plaintiffs commenced the action at issue with the filing of a Complaint in the Court of Common Pleas of Allegheny County on August 29, 2019.  The action was originally brought against Christine Pryor, Samuel Sanders IV, D. Parthenia Cogdell, and Mid-Century Insurance Company.  The matter was subsequently removed to this court by Mid-Century Insurance on October 21, 2019 (ECF No. 1). On December 17, 2019, Plaintiffs filed their First Amended Complaint (ECF No. 20).

Then, on October 9, 2020, this Court issued its Memorandum Opinion (ECF No. 41) and Order (ECF No. 42) granting, with prejudice, defendants Sanders and Cogdell's Motion to Dismiss the First Amended Complaint for lack of subject matter jurisdiction; granting, without prejudice, Mid-Century's Motion to Dismiss the first Amended Complaint; and denying Plaintiffs' Motion to Remand.  Following the Court's decision, Plaintiffs filed their Second Amended Complaint ("SAC").  ECF No. 43.  The Court then issued its June 25, 2021 Memorandum Opinion (ECF No. 49) and Order (ECF No. 50) denying Pryor's Motion to Dismiss the SAC and granting Pryor's Motion to Strike paragraphs 7, 8, 9, 10, 11, 12, 13, 14, 26, and 31 of the SAC.  On April 27, 2023, Plaintiffs voluntarily dismissed Pryor from this case.  ECF No. 105.  In the SAC, Plaintiffs bring claims against Mid-Century for violations of 75 Pa.C.S. § 1797 and breach of an insurance contract.

Mid-Century filed the Partial Motion for Summary Judgment (ECF No. 103), along with a Brief in Support (ECF No. 104), a Concise Statement of Material Facts (ECF No. 102), and an Appendix of Exhibits (ECF Nos. 99, 111), on April 24, 2023.  On May 31, 2023, Plaintiffs filed

their Response to Mid-Century's Concise Statement of Material Facts (ECF No. 109) and their Appendix of Exhibits (ECF No. 108). On June 1, 2023, Plaintiffs filed their Brief in Opposition. ECF No. 110. On June 14, 2024, Mid-Century filed a Reply (ECF No. 114), its Response to Plaintiffs' Concise Statement of Material Facts (ECF No. 113), and a Supplemental Appendix (ECF No. 112).

### B. Factual Background

Unless otherwise noted, the following facts are not in dispute:

Plaintiffs are insured by Mid-Century under a Personal Auto Policy (Policy No. 19577-08-03) with effective dates of September 30, 2016 to March 30, 2016 and March 30, 2017 to September 30, 2017. SOMF, ¶ 1, Resp. SOMF ¶ 1.

On March 21, 2016, Dr. Pierchalski was involved in an automobile accident during the course of her employment. SOMF ¶ 2; Resp. SOMF ¶ 2. "Dr. Pierchalski alleges that the March 21, 2016 accident caused her to suffer a lumbar disc tear, aggravation of pre-existing cervical thoracic and lumbar spine disease, pelvic floor injury and pain, sciatica, thoracic disc protrusion, abdominal injury, cervical thoracic and lumbar strain, left knee injury, cervical disc bulge[,] and whiplash." SOMF ¶ 3; Resp. SOMF ¶ 3.

Then, on September 1, 2017, while recovering from the 2016 accident, Dr. Pierchalski was involved in a second accident. SOMF ¶ 4; Resp. SOMF ¶ 4. As a result of the September 1, 2017 accident, Dr. Pierchalski alleges that she suffers "cervical radiculopathy, bilateral neck and shoulder pain, aggravation of pre-existing cervical, thoracic, and lumbar spine disease, aggravation of pelvic floor injury, whiplash[,] and sciatica." SOMF ¶ 5, Resp. SOMF ¶ 5.

Dr. Pierchalski alleges that Mid-Century refused to pay for her medical treatment as to both the 2016 and 2017 accidents as required by the Motor Vehicle Financial Responsibility Law.

SOMF ¶ 6; Resp. SOMF ¶ 6.  Additionally, Dr. Pierchalski alleges wage loss resulting from the 2017 accident in her SAC.  SOMF ¶ 7; Resp. SOMF ¶ 7.  However, the parties disagree as to whether Dr. Pierchalski alleges wage loss resulting from the 2016 accident in her SAC.[2]  *Id.*

Following the 2016 accident, on April 7, 2016, Dr. Pierchalski requested that her claim be put on inactive status with Mid-Century.  SOMF ¶ 9; Resp. SOMF ¶ 9.  However, on June 25, 2017, Dr. Pierchalski reopened her claim for wrap around benefits, and around the same time, opened her claim for worker's compensation benefits resulting from the 2016 accident.  SOMF ¶ 10; Resp. SOMF ¶ 10.  On April 19, 2018, Dr. Pierchalski settled her workers' compensation claim against her employer related to the 2016 accident.  SOMF ¶¶ 51, 55; Resp. SOMF ¶¶ 51, 55.  Additionally, Mid-Century paid wrap around wage loss to Dr. Pierchalksi following the workers' compensation settlement, however, the parties disagree as to whether additional wrap around benefits are owed.  SOMF ¶¶ 51-52; Resp. SOMF ¶¶ 51-52.  The parties also disagree on whether Mid-Century is responsible for covering Dr. Pierchalski's treatment necessitated by the 2016 accident.  SOMF ¶ 54; Resp. SOMF ¶ 54.

Outside of the above disagreements concerning the 2016 accident, the parties disagree as to what benefits are owed in relation to the 2017 accident.  Specifically, the parties dispute whether Dr. Pierchalski was totally disabled prior to the 2017 accident and, as a result, whether Dr. Pierchalski is entitled to wage loss benefits resulting from the 2017 accident.  SOMF ¶¶ 11-12, 37, 39-42; Resp. SOMF ¶¶ 11-12, 37, 39-42.  Additionally, the parties disagree as to what treatment was or was not medically necessary and whether Mid-Century owes payment for said treatment.

---

[2] The parties disagree as to whether Plaintiffs have asserted a claim for wage loss concerning the 2016 accident. However, Mid-Century has not moved for summary judgment on this issue, and it is not necessary for the Court to decide this issue in order to dispose of Mid-Century's Partial Motion for Summary Judgment.  Therefore, this issue is not before the Court at this time.

In support of the parties' arguments concerning whether or not Dr. Pierchalski was totally disabled, the parties rely, in part, on documentation and reports created by Dr. Pierchalski's treating physician, Dr. Todd Franco, and by various other medical doctors created during the peer review process ("PRO process") utilized by Mid-Century. SOMF ¶¶ 13, 15; Resp. SOMF ¶¶ 13, 15. The peer review process was utilized by Mid-Century to challenge the relatedness of Dr. Pierchalski's medical bills, however, Plaintiffs challenge whether the PRO process was appropriately followed in this case. SOMF ¶ 15; Resp. SOMF ¶ 15.

As part of the PRO process, Mid-Century obtained reports from Dr. William Schroeder and Dr. Milton Klein on May 29, 2018 and June 6, 2018, respectively. SOMF ¶¶ 17-18, 23; Resp. SOMF ¶¶ 17-18, 23. Dr. Pierchalski requested reconsideration of both reports. SOMF ¶¶ 26-27; Resp. SOMF ¶¶ 26-27. In support of the reconsideration, Dr. Pierchalski submitted a report from Dr. Franco and additional medical records. SOMF ¶¶ 28-30; Resp. SOMF ¶¶ 28-30. On September 17, 2018, Dr. Paul Horchos issued his report concerning Dr. Pierchalski's request for reconsideration. SOMF ¶ 31; Resp. SOMF ¶ 31. On September 24, 2018, Dr. Mary Green issued her report concerning the reconsideration. SOMF ¶ 34-36; Resp. SOMF ¶¶ 34-36. The Court does not find it necessary, for purposes of resolving the Partial Motion to Dismiss, to summarize the reports detailed above.

## II.    Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## III.    Discussion

### A. Whether Plaintiffs' Claims for Attorney's Fees and Treble Damages Should be Dismissed

In Count II, Plaintiffs allege that Mid-Century violated 75 PaC.S. § 1797 of the Motor Vehicle Financial Responsibility Law ("MVFRL") and that they are therefore entitled to attorney's fees pursuant to 75 Pa.C.S. § 1798 and treble damages pursuant to 75 Pa.C.S. § 1797(b)(4).

#### 1. Attorney's Fees

Beginning with the parties' arguments surrounding attorney's fees, the Court finds it necessary to provide the following backdrop of the MVFRL:

Pursuant to § 1797, an insurer may submit an insured's medical bill to a peer review organization ("PRO") "for the purpose of confirming that such treatment, products, services[,] or

accommodations conform to the professional standards of performance and are medically necessary." 75 Pa.C.S. § 1797(b)(1).  The insurer or insured may "request a reconsideration by the PRO and the PRO's initial determination . . . within 30 days of the PRO's initial determination." *Id.* § 1797(b)(2).  While a decision is pending from the PRO, "the insurer need not pay the provider" and "[t]he insured may not be billed for treatment." *Id.* § 1797(b)(3).  If the "PRO determines that medical treatment . . . w[as] medically necessary, the insurer must pay the provider the outstanding amount plus interest at 12% per year on any amount withheld." *Id.* § 1797(b)(5).  If the PRO determines that the "provider has provided unnecessary medical treatment . . . or that future provision of such treatment . . . will be unnecessary, or both, the provider may not collect payment." *Id.* § 1797(b)(7).

If the insurer does not utilize the PRO process, an insured or a provider "may challenge before a court an insurer's refusal to pay for post or future medical treatment." *Id.* § 1797(b)(4). If the "court determines that medical treatment . . . w[as] medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney's fees." *Id.* § 1797(b)(6).  Additionally, under such circumstances, an insurer who has engaged in wanton conduct "shall be subject to a payment of treble damages to the injured party." *Id.* § 1797(b)(4).

Here, Plaintiffs requests attorney's fees pursuant to § 1798, and in support of such request argue that Mid-Century violated § 1797.[3]  The Court notes that an additional section of the

---

[3] Plaintiffs additionally argue that Mid-Century incorrectly asserts that § 1716 preempts Plaintiff's ability to seek punitive damages pursuant to Pennsylvania's bad faith statute, § 8371.  Resp. 6.  It is unclear to the Court why this argument is raised when addressing Mid-Century's Motion concerning attorney's fees.  Based on the Court's review, Mid-Century has not raised any arguments concerning punitive damages or § 8371.  Additionally, while not at issue at this time, the Court acknowledges that Plaintiff's SAC brings no action for bad faith or claims under § 8371. Therefore, the Court will not address any arguments by Plaintiff concerning bad faith, punitive damages, or § 8371 when resolving Mid-Century's Motion concerning attorney's fees because such arguments are not relevant to the Court's determination on the issue of attorney's fees.

MVFRL, § 1716, not plead by Plaintiffs, also allows for the award of attorney's fees and is relevant to the Court's consideration on this issue. While not pled by Plaintiff, the parties raise arguments concerning § 1716 and the Court acknowledges that the standard for attorney's fees under §§ 1798 and 1716 are nearly identical. *See Neal v. State Farm Mut. Auto Ins. Co.*, No. 1:13-cv-02309, 2015 WL 2250153, at *7, n.8 (M.D. Pa. May 12, 2015).

Section 1798 provides that:

> In the event an insurer is found to have acted with no reasonable foundation in refusing to pay the benefits enumerated in subsection (a) [motor vehicle liability insurance first party benefits and catastrophic loss benefits] when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa.C.S. § 1798(b).

With this backdrop, the Court begins with Mid-Century's overarching argument that Plaintiffs "cannot recover attorney's fees . . . because the reasonableness and necessity of [Dr. Pierchalski's] medical expenses were challenged before a PRO." Br. in Supp. 10. The Court agrees.

In *Turnpaugh Chiropractic Health and Wellness Center, P.C. v. Erie Insurance Exchange*, 297 A.3d 404 (Pa. 2023), the Superior Court of Pennsylvania held that a health provider is not entitled to attorney's fees under §§ 1716 and 1798 when the insurer utilizes the PRO process. In coming to this decision, the *Turnpaugh* court analyzed the interplay between § 1797 and §§ 1716 and 1798. The court began with outlining the current state of the law based on the Pennsylvania Supreme Court's holdings in *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 297 A.3d 404 (Pa. 2013) and *Doctor's Choice Physical Medicine & Rehabilitation Center, P.C. v. Travelers Personal Ins. Co.*, 128 A.3d 1183 (Pa. 2015). *Herd* and *Doctor's Choice* both established that attorney's fees are not warranted under § 1797 when the insurer utilizes the PRO

8

process. *Turnpaugh*, 297 A.2d at 421. With this precedent, the Superior Court held that because § 1797 and §§ 1716 and 1798 all pertain to first party benefits under the MVFRL, these statutes must be read together, which leads to the reasonable conclusion that attorney's fees may not be awarded under these three sections when the insurer utilizes the PRO process. *Id.* Specifically, as to § 1798, at issue here, the *Turnpaugh* court found that "an insurer does not 'refuse to pay' benefits under Section 1798 when it submits a case to peer review." *Id.*

Therefore, here, Plaintiffs cannot receive attorney's fees under § 1798 when Mid-Century utilized the PRO process. That said, Plaintiffs argues that Mid-Century failed to conduct a valid peer review because Mid-Century withheld pertinent information from the PRO reviewers. Specifically, Plaintiffs argue that Dr. Pierchalski requested reconsideration of both PRO reports and provided Mid-Century with Dr. Franco's narrative report, which was not made available to the reviewer. Br. in Opp. 7. Additionally, Plaintiffs argue that Dr. Pierchalski was not given the opportunity to discuss her reconsideration with the reviewers as required by 31 Pa. Code § 69.52(j). *Id.*

Even considering Plaintiffs' arguments that Mid-Century did not conduct a valid peer review, the Court still finds that Plaintiffs are not entitled to attorney's fees under § 1798. The courts in *Doctor's Choice* and *Turnpaugh* are clear that if the PRO process is utilized, an insured is not entitled to attorney's fees, whether or not the insurer conducts a proper peer review. *See Doctor's Choice*, 128 A.3d at 1189 (finding that attorney's fees could not be recovered pursuant to § 1797(b)(6) where the insurer timely challenges the reasonableness of treatment to a PRO, whether or not the PRO process was valid); *Turnpaugh*, 297 A.2d at 422 (finding that attorney's fees could not be recovered pursuant to §§ 1716 and 1798 in the peer review process despite a finding that the insurer had unreasonably referred the matter to peer review). Therefore, it is of no

consequence whether Mid-Century violated the peer review process. The sole fact that Mid-Century referred the matter to peer review means that attorney's fees cannot be recovered. The Court, however, joins the *Herd*, *Doctor's Choice*, and *Turnpaugh* courts in acknowledging the policy concerns at issue with this decision.

For these reasons, the Court will grant Mid-Century's Partial Motion for Summary Judgment, to the extent that the Court finds that Plaintiffs may not recover attorneys' fees.

### 2. Treble Damages

The Court now turns to whether Plaintiffs may recover treble damages pursuant to § 1797(b)(4). Section 1797(b)(4) provides:

> Appeal to court.--A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

75 Pa.C.S. § 1797(b)(4). The Eastern District of Pennsylvania describes wanton conduct as:

> "something different from negligence however gross, - different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor." *Stubbs v. Frazer*, 454 A.2d 119, 120 (Pa. Super. Ct. 1982) (citations omitted). It "exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." (*Id.*)

*Canfield v. Amica Mutual Insurance Co.*, Civil Action No. 20-2964, 2020 WL 5878261, at *2 (E.D. Pa. Oct. 2, 2020).

Here, the Court finds that Plaintiffs are not entitled to treble damages pursuant to § 1797(b)(4) for two reasons. First, treble damages are only available where the insurer has not challenged the reasonableness or necessity of medical treatment before a PRO. *See* 75 Pa.C.S. § 1797(b)(4). Here, as stated above when discussing attorney's fees, Mid-Century challenged the

reasonableness of Dr. Pierchalski's medical treatment before a PRO and, for that reason alone, treble damages are not available. *See Doctor's Choice*, 128 A.3d at 1185.

While the case law detailed by the Court above concerned the award of attorney's fees, and not treble damages, the Court finds that the statutory interpretation performed by the Supreme Court of Pennsylvania in *Doctor's Choice* is relevant to the Court's consideration on the issue of treble damages. In *Doctor's Choice*, the court analyzed the language in § 1797(b)(4), which provides for the award of treble damages. This is because § 1797(b)(6), which allows for the award of attorney's fees, specifically states that they are only available "[i]f, pursuant to [§1797(b)(4)], a court determines that medical treatment . . . w[as] medically necessary." *Doctor's Choice,* 128 A.3d at 1185 (quoting 75 Pa.C.S. § 1797(b)(6)). The *Doctor's Choice* court noted that "the cross-reference paragraph—Section 1797(b)(4)—pertains only to court challenges of carrier withholdings where "the insurer has not challenged [the reasonableness or necessity of treatment] before a PRO." *Id.* (quoting § 1797(b)(4)). For this reason, the *Doctor's Choice* court found that attorney's fees, pursuant to § 1797(b)(6), were not available if an insurer utilized the PRO process.

Here, likewise, pursuant to § 1797(b)(4), treble damages are not available where an insurer utilizes the PRO process. Further, for the reasons stated above, even considering Plaintiffs' arguments that Mid-Century did not conduct a valid peer review, the Court still finds that Plaintiffs are not entitled to treble damages pursuant § 1797(b)(4). *See Doctor's Choice*, 128 A.3d at 1189; *Turnpaugh*, 297 A.2d at 422.

Second, to the extent that treble damages would be otherwise available to Plaintiffs (irrespective of whether Mid-Century utilized the PRO process), the Court cannot find that Plaintiffs have presented evidence of wanton conduct on the part of Mid-Century. There is no

evidence before the Court that Mid-Century declined to pay for Dr. Pierchalski's medical treatment with "a willingness to inflict injury, a conscious indifferent to the perpetration of the wrong." *Canfield*, 2020 WL 5878261, at *2.

For these reasons, the Court will grant Mid-Century's Partial Motion for Summary Judgment to the extent that the Court finds that Plaintiffs are not entitled to treble damages.

**B.   Whether Dr. Pierchalski's Claim for Continuing First Party Benefits is Precluded Under Her Policy and PA Law that Provide for a Three-Year Statute of Limitations**

Mid-Century argues that Dr. Pierchalski "is not entitled to any medical or work loss benefits incurred after [] September 1, 2020, because the three-year statute of limitations has expired" as provided for in 75 Pa.C.S. § 1715(a)(5), and as upheld by the Pennsylvania Superior Court in *Toner v. Nationwide Ins. Co.*, 610 A.2d 53 (Pa. Super. 1992).  Br. in Supp. 14.

Dr. Pierchalski argues that Mid-Century has waived its "right to assert the three-year statute of limitations . . . due to its continued performance subsequent to [the] three year deadline."  Resp. 9.  Specifically, Dr. Pierchalski argues that on June 30, 2021, Mid-Century was still making payments for first-party medical benefits as a result of the September 1, 2017 accident and that as such Mid-Century has demonstrated a clear intent to waive the statute of limitations.  *Id.* 10.

Section 1715(a)(5) provides that:

(a) *General Rule*-An insurer shall make available for purchase first party benefits as follows:
. . . . . .
> (5) For combinations of benefits enumerated in paragraphs (1), (2), (3), and (4) and subject to limitation on the accidental death benefit of up to $25,000, and a limit on the funeral benefit of $2,500, up to at least $177,500 of benefits in the aggregate or benefits *payable up to three years from the date of the accident*, whichever occurs first, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of subsection (d).[4]

---

[4] The reference to subsection (d) is not material to the disposition of this case.

75 Pa.C.S. § 1715(a)(5) (emphasis added).  Dr. Pierchalski does not dispute that the three-year

statute of limitations outlined in Section 1715(a)(5) is applicable to this case.  Instead, Dr.

Pierchalski argues that Mid-Century has waived the statute of limitations or is in some way

estopped from arguing it.

     With respect to waiver, the Superior Court of Pennsylvania has explained:

> Waiver is the voluntary and intentional abandonment or relinquishment of a known
> right.  *Samuel J. Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill
> Associates Ltd. Partnership*, 416 Pa.Super. 45, 610 A.2d 499 (1992).  "Waiver may
> be established by a party's express declaration or by a party's undisputed acts or
> language so inconsistent with a purpose to stand on the contract provisions as to
> leave no opportunity for a reasonable inference to the contrary."  *Id.* at 501.

*Prime Medica Associates v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156–57 (Pa. Super. Ct.

2009).  It has explained as follows with respect to estoppel:

> Equitable estoppel is a doctrine that prevents one from doing an act differently
> than the manner in which another was induced by word or deed to expect.  A
> doctrine sounding in equity, equitable estoppel recognizes that an informal
> promise implied by one's words, deeds or representations which leads another to
> rely justifiably thereon to his own injury or detriment may be enforced in equity.

*Kreutzer v. Monterey County Herald Co.*, 747 A.2d 358, 361 (2000) (quoting *Novelty Knitting

Mills v. Siskind*, 457 A.2d 502, 503 (1983)).  The party asserting estoppel bears the burden of

establishing estoppel by clear, precise and unequivocal evidence.  *Farmers Trust Co. v.

Bomberger*, 523 A.2d 790 (1987).  "[M]ere silence or inaction is not a ground for estoppel unless

there is a duty to speak or act."  *Id.* at 793 (quoting *Brown v. Haight*, 255 A.2d 508, 512 (1969)).

     At issue, here, is whether a one-time payment from Mid-Century after the three-year statute

of limitations constitutes waiver of the statute of limitations or estops Mid-Century from arguing

that the statute of limitations has expired.  In support of its position that waiver and estoppel are

not implicated, Mid-Century references a January 6, 2022 letter from Mid-Century to Dr.

Pierchalski's prior counsel acknowledging the payment at issue and detailing that Mid-Century

does not intend to waive the three-year statute of limitations. *See* ECF No. 112-7.

However, this letter was submitted for the first time in support of Mid-Century's Reply and

therefore, Dr. Pierchalski has not had the opportunity to respond to the letter. As explained by the

Third Circuit:

> There is cause for concern where a movant presents new arguments or evidence for
> the first time in a summary judgment reply brief, particularly if the District Court
> intends to rely upon that new information in granting summary judgment to the
> movant. *See, e.g., Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1164 (10th
> Cir.1998) ("[W]hen a moving party advances in a reply new reasons and evidence
> in support of its motion for summary judgment, the nonmoving party should be
> granted an opportunity to respond."); *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th
> Cir.1996) (a District Court should not consider new evidence raised in the reply to
> a motion for summary judgment without giving the nonmoving party an
> opportunity to respond); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754
> F.2d 404, 410 (1st Cir.1985) ("[T]he nonmoving party ... should have had an
> opportunity to examine and reply to the moving party's papers before the court
> considered them in its decision process.").

*Alston v. Forsyth*, 379 Fed. App'x 126, 129 (3d Cir. 2010).

Here, because Dr. Pierchalski has had no meaningful opportunity to respond to the letter

submitted for the first time in Mid-Century's Reply, the Court will, at this time, not consider the

letter. Therefore, there remain disputed questions of material fact as to whether or not Mid-

Century waived the three-year statute of limitations and as to whether Mid-Century should be

estopped from arguing the three-year statute of limitations. Additionally, the Court has remaining

questions as to whether Defendant can waive the statute of limitations based on a one-time

payment, regardless of the letter, and as to what effect the letter has on the issue of waiver. The

Court will invite further briefing on this issue and will discuss the opportunity for further briefing

with the parties.

For these reasons, Mid-Century's Partial Motion for Summary Judgment will be denied to the extent the Court finds that there remain genuine issues of material fact as to whether the three-year statute of limitations remains a viable defense.

### C. Whether Dr. Pierchalski's Claim for First-Party Work Loss Following the 2017 Accident Fails Because She Cannot Prove "But For" Causation

Mid-Century argues that its policy, and the MVFRL, provide only for income loss that is incurred "but for" an accident. Br. in Supp. 16. As such, Mid-Century argues that because Dr. Pierchalski was found to be totally disabled prior to the 2017 accident, any wage loss she incurred, was not caused by the 2017 accident. In support of this argument, Mid-Century relies on Dr. Franco's 2018 Report and the Social Security Determination which both found that any wage loss incurred by Dr. Pierchalski following the September 1, 2017 accident, resulted from a combination of prior accidents. As such, Mid-Century argues that her wage loss was not "but-for" the September 1, 2017 accident. *Id.* at 17. Further, Mid-Century argues that both Dr. Pierchalski's counsel and Dr. Franco confirmed that Dr. Pierchalski was totally disabled at the time of the September 1, 2017 accident and was, therefore, not working. *Id.*

Dr. Pierchalski argues that genuine issues of material fact exist as to whether she was totally disabled prior to the 2017 accident, and that Mid-Century's Motion should be denied on this issue. Resp. 9. In support of this argument, Dr. Pierchalski details that on December 14, 2017, Dr. Franco stated that Dr. Pierchalski's "disability began on September 1, 2017 and restricted her from work from December 14, 2017 until February 15, 2018." *Id.* Further, Dr. Pierchalski argues that Dr. Franco's additional form stated that Dr. Pierchalski's "disability began on September 1, 2017 and placed her on work restrictions until February 15, 2018." *Id.* Lastly, Dr. Pierchalski testified that she intended to return to work but following the September 1, 2017 accident, she was

unable to work. *Id.* Dr. Pierchalski argues that these records establish a genuine issue of material

fact. *Id.*

> The Eastern District of Pennsylvania provides that:
>
> An injured person may recover income loss benefits by showing that "but for" the accident, he or she would have worked and earned income. *Sakol v. Nationwide Mutual Insurance Co.,* 2007 WL 1811215 (M.D.Pa. June 21, 2007). Recovery of income loss benefits based upon actual loss of gross income requires only that the loss of income be real, that is that it have "a valid objective existence as opposed to that which is merely theoretical or possible." *Id.* (Citing *Black's Law Dictionary* (5th ed.1979)). Under this standard, there can be no recovery for lost income merely because there has been a loss of earning capacity. *Id.* Rather, recovery must be based upon an actual loss of income which would have been earned "but for" injuries received in the accident. *Id.*

*Brown v. Liberty Mut. Fire Ins.*, Civil Action No. 06-2868, 2008 WL 819897, at *4 (E.D. Pa.

March 26, 2008).

Here, the Court agrees that there are genuine issues of material fact as to whether Dr.

Pierchalksi was totally disabled prior to the 2017 accident. Specifically, the reports of Dr. Franco

present conflicting evidence as to whether or not Dr. Pierchalski was disabled prior to the 2017

accident. Dr. Franco's April 3, 2018 Report details that, following the March 21, 2016 accident,

Dr. Pierchalski participated in treatment which provided "variable response with periods of

improvement and exacerbation" and that "[a]s a result, [Dr. Pierchalski] was pulled from work to

concentrate on recovery, therapy and improvement in function." ECF No. 99-26, p. 2. Then, the

report details that on September 1, 2017, Dr. Pierchalski was involved in another motor vehicle

accident. *Id.* Dr. Franco opined that the September 1, 2017 accident exacerbated Dr. Pierchalski's

prior injuries but that "she was never back to baseline in [his] opinion and as a result [the

September 1, 2017 accident] plays the least significant role in her clinical course." *Id.* at p. 3.

Additionally, Dr. Franco's September 6, 2017 Report states that Dr. Pierchalski's disability

began on September 1, 2017. ECF No. 99-15, p. 8. The report additionally details that Dr.

16

Pierchalski has not "been released to full work/household duties" and that the dates of her disability are from September 1, 2017 to present. *Id.* However, Dr. Franco's December 14, 2017 Amended Report provides that Dr. Pierchalski has not "been released to full work/household duties" and that the dates of her disability are from December 14, 2017 to February 15, 2018. ECF No. 99-25.

As stated, the reports of Dr. Franco provide conflicting evidence as to whether the September 1, 2017 accident was a "but for" cause of Dr. Pierchalski's income loss. While the Amended Report details that the date of Dr. Pierchalski's disability began on December 14, 2017, the April 3, 2018 Report provides some doubt as to whether or not Dr. Pierchalski was intending to return to work prior to the September 1, 2017 accident. Even considering Dr. Pierchalski's Affidavit[5], *see* ECF No. 108-39, which details that she intended to return to work, Dr. Pierchalski's counsel's September 18, 2017 letter, *see* ECF No. 99-7, which details that Dr. Pierchalski was totally disabled as of August 21, 2017, and the Social Security Determination, these questions of material fact are not resolved. In viewing the evidence in the light most favorable to Dr. Pierchalski, the Court cannot find that Mid-Century is entitled to summary judgment on this issue.

### D. Whether Dr. Pierchalski Can Recover First-Party Medical or Work Loss Benefits from the March 21, 2016 Accident

Mid-Century argues that Dr. Pierchalski cannot recover any additional first-party medical or work loss benefits from the 2016 accident because it has paid Dr. Pierchalski the wrap around wage loss requested for the 2016 accident and because the existence of the workers' compensation settlement means that any additional benefits must be paid by workers' compensation. Br. in Supp. 17. In support of this argument, Mid-Century points to the policy at issue which it argues provides

---

[5] Mid-Century argues that the Court should strike Plaintiff's Affidavit because it is a "sham affidavit." Reply SOMF, ECF No. 113, p. 2. However, even if the Court were to strike Plaintiff's Affidavit, the Court would still find that issues of material fact exist. Therefore, the Court need not resolve this issue in order to decide Mid-Century's Partial Motion for Summary Judgment.

that any excess coverage only applies "over any amounts paid or payable to an insured under any workers' compensation law." *Id.* Mid-Century argues that because Dr. Pierchalski settled her workers' compensation claim, the policy does not provide for coverage that Dr. Pierchalski "chose to forego in a settlement." *Id.* at 18. Plaintiffs have not directly responded to these arguments in their briefing, however, Plaintiffs have raised arguments concerning the workers' compensation settlement in their Response to the Statement of Material Facts.

Mid-Century has not cited any authority in support of its arguments and has not provided the Court anything more than conclusory arguments that such payment is not warranted in this case. Additionally, the parties are in disagreement as to whether Mid-Century has paid all of the wrap around wages owed to Dr. Pierchalski, *see* SOMF ¶ 51; Resp. SOMF ¶ 51, and the parties have not sufficiently briefed this issue so that the Court can make any determination as to whether there remain any outstanding payments for wrap around wages.

Further, Mid-Century's argument appears to rely, at least in part, on a document from Plaintiffs which states that Dr. Pierchalski's employer's workers' compensation carrier paid for all reasonable and necessary treatment. *See* SOMF ¶ 53. However, Plaintiffs argue that the document at issue is a confidential settlement communication that should have never been disclosed. *See* Resp. SOMF ¶ 53. Plaintiffs stated that they planned to submit a motion to the Court concerning the disclosure of this document, however, no such motion has been filed. Without further argument from the parties on this issue, the Court cannot determine whether this document is or is not admissible, and, therefore, cannot make any determination as to what benefits are or are not owed to Dr. Pierchalski.

If the parties are serious concerning these arguments—which the Court questions given that Mid-Century submitted one succinct paragraph of argument and given that Plaintiffs failed to

directly respond to any such argument and failed to file a motion concerning the above document at issue—the Court will allow the parties to file additional briefing and will discuss with the parties such an opportunity.

Therefore, material issues of fact remain as to whether Mid-Century has paid the wrap around wage loss at issue and as to whether any additional medical and wage loss benefits should be paid by workers' compensation and not Mid-Century. For this reason, Mid-Century's Partial Motion for Summary Judgment is denied to the extent that the Court finds there remain genuine issues of material fact as to whether Dr. Pierchalski can recover additional benefits relating to the 2016 accident.

## IV.    Conclusion

For the reasons discussed above, the Court will grant, in part, and deny, in part, Mid-Century's Motion for Partial Summary Judgment. An appropriate Order of Court follows.


                                                    BY THE COURT:


                                                    _/s/Robert J. Colville_
                                                    Robert J. Colville
                                                    United States District Judge

DATED: March 28, 2025

cc: All counsel of record